UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN DENISE HILL,                        Case No. 17-10089

Plaintiff,                               Thomas L. Ludington
    v.                               United States District Judge

COMMISSIONER OF SOCIAL                   Stephanie Dawkins Davis
SECURITY,                                United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On January 11, 2017, plaintiff Dawn Denise Hill filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 14, 16).

### B.    Administrative Proceedings

Plaintiff filed a prior application for a period of disability and disability insurance benefits and was found "not disabled" in a decision dated December 18,

2014.  (Tr. 52).[1]  On March 8, 2016, the Appeals Council vacated the prior decision and remanded the case back to the same Administrative Law Judge ("ALJ") James J. Kent.  (*Id.*).  Plaintiff is alleging disability beginning on January 17, 2013.  (*Id.*).  Plaintiff appeared with counsel at a hearing on June 28, 2016.  (*Id.*).  On August 2, 2016, after considering the case on remand, ALJ Kent issued a second unfavorable decision, finding plaintiff not disabled from the alleged onset date through the date of the decision.  (*Id.*).  Plaintiff requested a review of this decision.  (Tr. 44).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 9, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr.", referring to the administrative record page number found in the lower right corner of each page.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born September 12, 1966, was 46 years old on the alleged

disability onset date.  (Tr. 30).  She has past relevant work in data entry, as an

administrative assistant clerk, and as a bookkeeper.  (Tr. 65).  The ALJ applied the

five-step disability analysis and found at step one that plaintiff had not engaged in

substantial gainful activity since January 17, 2013, the alleged onset date.  (Tr. 55).

At step two, the ALJ found that plaintiff's degenerative disease of the lumbosacral

spine, osteoarthritis, autoimmune hepatitis, a mixed undifferentiated connective

tissue disorder, generalized dysmotility syndrome, depressive disorder, generalized

anxiety disorder and attention deficit hyperactivity disorder (ADHD) were

"severe" within the meaning of the second sequential step.  (Tr. 55-56).  However,

at step three, the ALJ found no evidence that plaintiff's impairments singly or in

combination met or medically equaled one of the listings in the regulations.  (Tr.

56-57).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> except she can lift up to 20 pounds occasionally and 10
> pounds frequently.  She can stand and walk for six hours
> and sit for six in an eight-hour workday with normal

> breaks.  She is unable to climb ladders, ropes or
> scaffolds, occasionally balance, stoop, kneel, crouch,
> crawl, and climb stairs.  She can frequently feel on the
> right hand.  She must avoid excessive cold, humidity and
> vibration.  She is limited to simple, routine and repetitive
> tasks.

(Tr. 57).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 65).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 65-66).

   B.    Plaintiff's Claims of Error

   Plaintiff has two claims of error against the ALJ.  Plaintiff's first argument is

that the ALJ erred in failing to give controlling weight to plaintiff's treating

physician Dr. Breese.  (Dkt. 14, Pl.'s Brief, at p. 6).  Plaintiff notes the Treating

Physician Rule that greater deference is generally given to a treating physician's

opinion over non-treating physicians.  (*Id.*).  When the treating physician's opinion

is not given controlling weight, the ALJ, in determining how much weight is

appropriate, must consider a host of factors, including the length, frequency,

nature, and extent of the treatment relationship; the supportability and consistency

of the physician's conclusions; the specialization of the physician; and any other

relevant factors.  (*Id.* at p. 7) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004)).  Plaintiff also points out that the ALJ must provide "good

reasons" for discounting a treating physician's opinion.  (*Id.* at p. 8).

The ALJ discounted Dr. Breese's opinion given on an FMLA form in which the doctor noted that plaintiff would miss work two to six days per month.  The ALJ rejected Dr. Breese's opinion for two reasons: (1) the ALJ noted that the FMLA form Dr. Breese filled out applied to a period of time prior to the alleged onset date, and (2) the ALJ noted that a decision by another nongovernmental or governmental agency about whether an individual is disabled based on its own rules is not binding on the Social Security Administration.  (*Id.* at p. 9).  As to the ALJ's second reason, plaintiff argues it is inapposite.  The Department of Labor did not make a determination of disability.  (*Id.*).  The FMLA form is meant to have Dr. Breese's opinion of the effect of plaintiff's medical conditions, specifically, how much time plaintiff would miss from work.  Plaintiff's FMLA leave immediately preceded the termination of her employment due to the same conditions on which she bases her disability claim.  (*Id.*) (citing *Miller v. Colvin*, 114 F. Supp.3d 741, 769 (D.S.D. 2015) (finding FMLA form statements relevant where claimant utilized FMLA leave in the time immediately preceding employment termination)).  Plaintiff points out that both vocational experts on her disability claims agreed that an individual needing to miss one day of work per week per month would not be able to work.  (*Id.* at p. 10).

Second, plaintiff argues that the ALJ did not properly evaluate her credibility.  (*Id.* at p. 12).  The ALJ determined that plaintiff's subjective

complaints were not entirely credible. (*Id.*). Plaintiff argues that the ALJ did not follow the regulations when he discredited her complaints. Plaintiff points to the ALJ's statement that he found her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" and states that it does not comport with the ALJ's obligations under the regulations in evaluating her credibility. (*Id.* at p. 15). Further, she argues that the ALJ erroneously relied on plaintiff's activities in discounting her credibility. (*Id.*). Although activities are one factor to consider, they should not be used as substantial evidence to discredit her subjective complaints. (*Id.*) (citing *Acton v. Comm'r of Soc. Sec.*, 2014 WL 6750595, at *12 (E.D. Mich. Dec. 1, 2014). The ALJ also failed to consider plaintiff's good work record in making his determination. (*Id.* at p. 16). Plaintiff contends that her earnings report shows a strong work history. (*Id.*). Lastly, plaintiff cites *St Cin v. Comm'r of Soc. Sec.*, 2015 WL 3660151, at *8 (W.D. Mich. June 12, 2015), for the proposition that relying on activities of daily living in discounting a claimant's credibility may be error where the activities were not inconsistent with the claimant's allegations on his or her ability to function. (*Id.* at p. 16-17).

Finally, plaintiff argues that the ALJ's error in discounting Dr. Breese's opinion and plaintiff's credibility resulted in an erroneous RFC. (*Id.* at p. 18).

C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's RFC assessment. (Dkt. 16, Commissioner's Brief, at p. 9-11). The Commissioner points to examinations that showed, (1) mild musculoskeletal, neurological, and gastroenterological findings; (2) that her physical symptoms were well-controlled with treatment; (3) that she initially refused counseling or medication despite allegations of disabling anxiety; (4) that her mental conditions never required emergency care; and (5) aside from occasional notations of a depressed mood and affect, her mental status examinations showed little or no abnormalities. (*Id.* at p. 9).

The Commissioner's response to plaintiff's treating physician argument is twofold: First, substantial evidence supports the ALJ's weight assignment; and second, even if the ALJ erred, any error is harmless because the record supports the determination that plaintiff's impairments would not cause her to miss two to six days of work per month. According to the Commissioner, the ALJ correctly assigned Dr. Breese's opinion little weight because it predates the relevant period and was prepared to support plaintiff's application for time off work under the FMLA, which is not based on the Commissioner's disability standards. (*Id.* at p.

11) (citing *Davis v. Comm'r of Soc. Sec.*, at *9 (E.D. Mich. July 29, 2016) and 20

C.F.R. § 404.1504).  The Commissioner points out that at the time of her FMLA

application, plaintiff presented with right shoulder pain, liver disease, and anxiety.

(*Id.* at p. 12) (citing Tr. 426).  However, in her disability application, plaintiff

claimed she could not work due to the following impairments: depression, anxiety,

cirrhosis, Raynaud's syndrome, autoimmune hepatitis, connective tissue disease,

pruritus, osteoarthritis, polyarthralgia, and piriformis syndrome (sciatica).  (*Id.*)

(Tr. 330).  Although Dr. Breese's opinion listed many of the diagnoses cited in

plaintiff's disability application, her opinion focused on plaintiff's shoulder

surgery and anxiety, both for which plaintiff had experienced improvement.  (*Id.* at

p. 15).  Therefore, the conditions that prompted the FMLA application are not

entirely the same as those in her disability application.

Further, the Commissioner argues that there is nothing in the record or in Dr.

Breese's opinion or treatment notes supporting her opinion that plaintiff would

miss two to six days of work per month due to unspecified "flare-ups."  (*Id.* at p.

12-13).  When Dr. Breese examined her, she was in no apparent distress, her right

shoulder had normal range of motion, her extremities appeared normal, she had no

neurological deficits, and was diagnosed with improved shoulder pain.  (*Id.* at p.

12) (Tr. 427).  Dr. Breese did not explain why plaintiff's shoulder surgery,

autoimmune hepatitis, persistent hand pain, Raynaud's disease, primary biliary

cirrhosis, anxiety, and polyarthralgia are disabling. (*Id.* at p. 13). Plaintiff was able to work full time until January 2013 despite active diagnoses of Raynaud's syndrome, cirrhosis, osteoarthritis, sciatica (with Piriformis syndrome), autoimmune hepatitis, hypokalemia, pruritis, and inflammatory bowel disease, and status post shoulder surgery. (*Id.*) (Tr. 379, 382, 384, 388). Further, the Commissioner argues that treatment records from July 2012 to January 2013 do not support Dr. Breese's prediction that plaintiff's conditions would require significant absences from work. (*Id.* at p. 13-15).

The Commissioner contends that the record supports the ALJ's RFC assessment, while simultaneously undercutting Dr. Breese's opinion that plaintiff would frequently miss work. (*Id.* at p. 15). Even if the Court found that the ALJ did not provide "good reasons" for discounting Dr. Breese's opinion, remand is not warranted where the ALJ has met the procedural goals of 20 C.F.R. § 404.1527 "by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." (*Id.* at p. 16). Here, the ALJ indirectly attacked Dr. Breese's opinion that plaintiff's symptoms would cause her to miss work when the ALJ explained how the evidence supported the RFC. (*Id.* at p. 17). Therefore, the ALJ satisfied the procedural requirements of 20 C.F.R. § 404.1527, and remand is not necessary. (*Id.*).

The Commissioner argues that substantial evidence also supports the ALJ's credibility determination, and this Court should uphold the ALJ's determination because plaintiff has not provided a "compelling reason" to disturb it. (*Id.* at p. 17). Although plaintiff insists that her "activities are not indicative of an ability to work full-time forty hours a week," those activities are still an important factor in evaluating subjective complaints. (*Id.* at p. 18) (citing 20 C.F.R. § 404.1529(c)(3)(i)). Contrary to plaintiff's argument, the ALJ did not equate plaintiff's daily activities to the ability to work full-time; rather, the ALJ appropriately cited her activities as some evidence that she was not as limited as she alleged. (*Id.*) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that [the claimant's] subjective complaints were not credible in light of her ability to perform other tasks."). According to the Commissioner, the ALJ properly juxtaposed plaintiff's claims that her mental condition had deteriorated and she needed to lie down and elevate her legs throughout the day against evidence that she still managed to cook, do laundry, wash dishes, vacuum, go shopping, drive, go for walks, bake, socialize, go out to lunch, go to the food bank with a friend, and attend a Bon Jovi concert. (*Id.*) (Tr. 62-63, citing Tr. 84-88; Tr. 351-59, 477).

Further, the Commissioner argues that the ALJ was not required to accept plaintiff's complaints because she had a good work record. (*Id.*). Good work

history is one factor to consider in weighing credibility, but it is not a dispositive

factor.  (*Id.* at p. 18-19) (citing 20 C.F.R. § 404.1529(c)(3)).  Because the ALJ

cited other substantial reasons for discounting plaintiff's reports of disabling

limitations, the Court should not disturb his decision.  (*Id.* at p. 19).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

    If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).
Title II benefits are available to qualifying wage earners who become disabled
prior to the expiration of their insured status; Title XVI benefits are available to
poverty stricken adults and children who become disabled.  F. Bloch, Federal
Disability Law and Practice § 1.1 (1984).  While the two programs have different
eligibility requirements, "DIB and SSI are available only for those who have a
'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"
means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review
terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence
and severity of limitations caused by her impairments and the fact that she is
precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited
with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step
without a finding rejecting the existence of disability, the burden transfers to the
Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.
*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where
substantial evidence supports the ALJ's decision, it must be upheld.

16

C.     <u>Analysis and Conclusions</u>

1.     Treating Physician

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must apply specific factors to resolve the question of what weight will be assessed. Those factors include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544. Failure to analyze a treating source opinion

under the two-prong controlling weight test amounts to the failure to provide good

reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

> This requirement is not simply a formality; it is to
> safeguard the claimant's procedural rights.  It is intended
> "to let claimants understand the disposition of their cases,
> particularly in situations where a claimant knows that his
> physician has deemed him disabled and therefore might
> be especially bewildered when told by an administrative
> bureaucracy that [ ] he is not.  Significantly, the
> requirement safeguards a reviewing court's time, as it
> "permits meaningful" and efficient "review of the ALJ's
> application of the [treating physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  "This circuit

'has made clear that [it] do[es] not hesitate to remand when the Commissioner has

not provided good reasons for the weight given to a treating physician's opinion.'"

*Gayheart*, 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

The ALJ did not err in giving Dr. Breese's FMLA opinion that plaintiff

would miss work two to six days a month limited weight.  In weighing Dr.

Breese's opinion, the ALJ stated the following:

> As for the opinion evidence, I gave limited weight to the
> claimant's health care provider (Dr. Breese) medical
> certification for employee FMLA coverage, dated July
> 2012.  Accordingly, the claimant had a variety of
> physical and mental issues that would likely cause her to
> miss work two times per month for one to three days
> each time.  However, since this form pertained to a
> period prior to the period under review, I find limited
> weight is appropriate.  Further, a decision by any
> nongovernmental agency or any other governmental
> agency about whether an individual is disabled is based

18

on its own rules and is not binding upon the Social
Security Administration (20 CFR 404.1504 and 416.904)
(Ex. 1F).

The FMLA form contains Dr. Breese's opinion that plaintiff would miss work two

to six days per month due to unspecified flare-ups.  (Tr. 375).   As noted by the

Commissioner, on the FMLA form, Dr. Breese listed the following impairments as

relevant medical facts related to the condition for which plaintiff sought leave:

shoulder surgery November 2011, autoimmune hepatitis, persistent hand pain,

Raynaud's disease, primary biliary cirrhosis, anxiety, and polyarthralgia.  (Tr.

374).   However, the rest of the form and the facts surrounding the form suggest

that the FMLA leave is focused on plaintiff's right shoulder issues.  Prior to filling

out the form, on July 16, 2012, Dr. Breese noted that plaintiff said she missed work

because of her shoulder surgery in November and wanted FMLA paperwork filled

out.  (Tr. 426).  A few days later, on July 20, 2012, Dr. Breese filled out the FMLA

form.[2]  (Tr. 373-76).  Dr. Breese noted that the condition commenced in November

2011 (when she had her right shoulder surgery), and that plaintiff was <u>not</u> unable to

perform her job functions due to the condition.  In response to the question

requesting an estimate for the beginning and ending dates of the period of

---

[2] Plaintiff's point is well-taken that Dr. Breese's completion of the FMLA form does not seem to
qualify as a "<u>decision</u> by any other governmental agency or a nongovernmental entity about
whether you are disabled."  20 C.F.R. § 404.1504 (emphasis supplied).  Rather, it is an
assessment by plaintiff's doctor for use by her employer in making a decision about whether she
qualified for leave under the Act.  Thus, the ALJ's reliance on 20 C.F.R. § 404.1504 for the
proposition advanced seems misplaced.

incapacity due to the condition, Dr. Breese wrote "November 2011 for 3 weeks for shoulder procedure."  (Tr. 375).  Dr. Breese also indicated that plaintiff would have flare-ups preventing her from performing her job functions and that it is medically necessary for her to be absent from work during the flare-ups for doctor's appointments and time off as determined by the doctor at these appointments. (*Id.*).  Dr. Breese estimated that these flare-ups would cause her to miss work two times per month for one to three days per episode, or two to six days per month. (*Id.*).  Notably, while not highlighted by either party, the estimate concerning the number of days per month that plaintiff would likely miss from work was circumscribed by the question itself to the "next six months."  (*Id.)*

As the ALJ noted, the FMLA form predates the alleged onset date of disability, and thus has little probative value.  "Medical opinions that predate the alleged onset of disability are of limited relevance."  *Carmickle v. Comm'r, Soc. Sec*, 533 F.3d 1155, 1165 (9th Cir. 2008).  Indeed, "[t]his Court has repeatedly stated that an ALJ is limited to considering medical evidence rendered after the alleged onset date."  *Moore v. Colvin*, 2015 WL 4066735, at *4 (E.D. Mich. July 2, 2015) (citing *Gatewood v. Astrue,*  2008 WL 3838354, at *14 (E.D. Mich. Aug.12, 2008)); *Mohssen v. Comm'r of Soc. Sec.*, 2013 WL 6094728, at *11 (E.D. Mich. Nov. 20, 2013) (finding that the ALJ's failure to even mention a treating physician's opinion dated a year before the alleged onset date was at most harmless

error) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001));

*Owings v. Colvin*, 133 F. Supp. 3d 985, 1002 (M.D. Tenn. 2015) ("This court has

previously held that the ALJ did not err in not considering the opinion of a treating

physician who did not treat the claimant during the relevant time.") (citation

omitted).  The undersigned notes that medical evidence predating the alleged onset

date can be probative of disability during the relevant period in some

circumstances, particularly "where evidence before or after the relevant period

shows findings indicative of an ongoing or chronic impairment that does not

improve or fluctuate."  *Canestrare v. Comm'r of Soc. Sec.*, 2017 WL 3130327, at

*4 (N.D.N.Y. July 21, 2017) (citing *Mills v. Astrue*, 2012 WL 6681685, at *2

(N.D.N.Y. Dec. 21, 2012); *see also Johnson v. Colvin*, 2015 WL 3823002, at *10

(E.D. Wash. June 19, 2015) (where records predate onset date by up to two years

documenting "complex psychosocial situation," they are probative of the plaintiff's

condition during relevant period).  The FMLA form predates the alleged onset date

by about six months and estimates the time off work restrictions only for a six-

month period.  Plaintiff's right shoulder pain improved and there are records

showing normal range of motion in the shoulder after the FMLA opinion.  (*See,

e.g.,* Tr. 427, 491).  Dr. Breese did not indicate if or how long plaintiff would

suffer from these flare-ups beyond the six-month period contained in the question.

In light of the foregoing precedent, the undersigned finds that the ALJ did not err in giving Dr. Breese's opinion limited weight.

Furthermore, Dr. Breese's opinion is not entitled to controlling weight because it is not consistent with the other substantial evidence in the record, *see Wilson*, 378 F.3d at 544; Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996) ("[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record."); and the opinion is not supported by the record. In the decision, the ALJ cites to records indicating that plaintiff's right shoulder was not as disabling as Dr. Breese predicted. For example, in September 2012, although there was tenderness in the joints of her shoulder there was no synovitis or effusion. (Tr. 59, 392). In her July 16, 2012, treatment notes, just prior to completing the FMLA form, Dr. Breese indicated that plaintiff's right shoulder had normal range of motion and that the pain in her shoulder had improved. (Tr. 59, 427). In November 2012, plaintiff had pain on range of motion in her right shoulder. (Tr. 406). In July 2013, plaintiff had normal range of motion in both shoulders. (Tr. 59, 491). In May 2014, plaintiff had normal range of motion on musculoskeletal examination. (Tr. 611). In April and July 2016, plaintiff had grossly intact shoulder active range of motion. (Tr. 771, 849-50).

These records do not support the opinion that plaintiff would miss two to six days of work per month due to right shoulder problems. *Hamblin v. Apfel*, 7 Fed. Appx. 449, 451 (6th Cir. 2001) ("[A]n ALJ is not bound by a treating physician's opinion if there is substantial evidence to the contrary. Dr. Page's more recent examination discounts Dr. Patel's outdated assessment and it is supported by the appellant's own attestation that his physical condition has improved.") (internal citation omitted). To be fair, as noted, Dr. Breese's opinion only purports to cover the six-month period immediately following her completion of the FMLA form; and while its supportability is dubious even for that limited time-frame based on the medical evidence recited above for that period, it also overstates her opinion to suggest that it extended beyond the period expressly provided for in the question to which she responded. Indeed, no other medical treater or advisor opines on whether or how often plaintiff would miss work due to her right shoulder condition.

Additionally, to the extent that the FMLA form is based on more than just plaintiff's shoulder problem, the medical evidence also does not support the assertion that her other impairments would cause her to miss two to six days of work per month. For example, the ALJ noted University of Michigan Health System reports as early as February 2012 assessing autoimmune hepatitis and liver disease, hypokalemia, inflammatory bowel disease, recent right shoulder surgery,

Raynaud's syndrome, osteoarthritis, sciatica, and piriformis syndrome.  (Tr. 58).

The assessments noted that

> [s]he was somewhat anxious, likely job related rather
> than impairment related.  There were unremarkable vital
> signs, neck, chest, heart and abdomen.  There was normal
> musculoskeletal range of motion.  Mood and affect
> appeared normal.  A liver ultrasound showed a somewhat
> heterogenous liver but without focal mass lesion.  There
> was a normal liver on Doppler imaging.  Her bone
> density test appeared normal.

(Tr. 58, 381, 384, 385).  Plaintiff also treated with the Center for Family Health

from early 2012 through early 2013 for autoimmune hepatitis, liver disease,

menopausal symptoms, right hand/thumb injury, right shoulder pain, sciatic pain,

and Raynaud's disease.  As the ALJ noted,

> A right hand xray confirmed "mild" tenosynovitis of first
> through fourth digits, "minimal" fluid signal, and "mild"
> arthritis of the joints.  Recurrent examinations often
> showed no distress and proper nourishment and
> development.  Right shoulder range of motion was
> normal.  Extremities appeared normal without edema or
> cyanosis.  Heart and lung sounds were normal.  Her
> treatment regimen reflected medications like Flexeril,
> Norco, and Naprosyn for symptom management (Ex.
> 4F). Her abdominal symptoms from gastritis "improved"
> with emergent care in May 2013.  A right upper quadrant
> ultrasound showed no evidence of gallbladder, kidney or
> pancreas disease process (Ex. 8F).

(Tr. 59).  In July 2013, Dr. Sachdev noted "stable" autoimmune liver

disease/cirrhosis/hepatitis, her acid reflux was stable, the mobility of her

dorsolumbar and cervical spine were normal and taking Norco helped her pain, and

24

medication helped her symptoms of depression and anxiety.  (Tr. 491).  Records also show that her Raynaud's syndrome and connective tissue disease were stable by August 2013.  (Tr. 60, 517, 520).  In March 2014, plaintiff's Raynaud's syndrome was well-controlled with medication and lifestyle modifications.  (Tr. 60, 504).  Regarding plaintiff's piriformis syndrome, plaintiff stated in March 2016 that an epidural steroid injection was the "most helpful" intervention and requested another injection (Tr. 760), and in April 2016 she could rise from a seated position without difficulty and ambulate unassisted.  (Tr. 61, 771).  She also had grossly intact motor function of the spine, hips, knees, and wrist.  (*Id.*).  Further, by June 2016, she reported that she was happy with her pain level, indicating that it was a "two" out of "ten."  (Tr. 61, 804).  The ALJ also noted "no results of radiographic imaging studies or clinical evaluations showing debilitating pathology since her alleged disability.  In fact, imaging studies of the liver, chest, right hand/foot, left shoulder, abdomen, and lumbar spine, revealed generally "mild" findings."  (Tr. 63).[3]

This medical evidence does not support Dr. Breese's conclusion that plaintiff would miss two to six days of work per month due to her medical conditions.  Rather, the medical evidence indicates that plaintiff's conditions

---

[3] These generally "mild" imaging studies can be found at the following record citations: liver (Tr. 381, 391, 405, 490), chest (Tr. 402, 754), right hand/foot (Tr. 507-09), left shoulder (Tr. 720), abdomen (Tr. 381, 501, 555), and lumbar spine (Tr. 552, 826-27).

improved or were well-controlled with medication. As such, substantial evidence supports the ALJ's determination that the FMLA opinion is entitled only to limited weight.

Even if the ALJ's asserted reasons for discounting Dr. Breese's opinion failed to adequately comport with the "good reason" requirement, the undersigned finds such error harmless. "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms. *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistence with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions). In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was

harmless. 391 Fed. Appx. at 440-41. The ALJ noted that the physician's RFC opinion was based on only one of the plaintiff's impairments and that the limitations were "too . . . unclear to be helpful." *Id.* at 440. The ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all when the ALJ explained that the state agency physicians found that the plaintiff lacked a "diminished capacity for lifting/carrying." And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed he could stand and sit for six hours out of eight. *Id.* at 441. The plaintiff's own statements also undermined the doctor's opinion. *Id.*

Here, the ALJ's discussion of the medical evidence, as demonstrated above, undermined both the supportability and consistency of Dr. Breese's opinion. *See Tuohy v. Sec'y of Health & Human Servs.*, 1994 WL 454880, at *5 (6th Cir. Aug. 22, 1994) (treating physician's opinion entitled to significant deference where no medical opinion or evidence in the record contradicts the physician's conclusions). No other medical opinion provides an estimate on how much work, if any, plaintiff would miss per month due to her conditions. And, as discussed above, the ALJ pointed to numerous medical records that indicate that her conditions either improved or were well-controlled. Thus, any error here is harmless and the ALJ's weight assignment is supported by substantial evidence.

2.      Credibility

"Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ." *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective

28

complaints and the record evidence tends to support the credibility of the

[plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th

Cir. 2011).

The undersigned finds no compelling reason to disturb the ALJ's credibility

determination.  After examining the medical evidence in relation to plaintiff's

subjective complaints, much of which is recounted above, the ALJ determined that

plaintiff's complaints were not entirely consistent with the medical evidence.  (Tr.

64).  The ALJ amply supported this assertion.  The ALJ stated,

> The record does not support the claimant's contentions as
> to the magnitude of her symptomology and dysfunction,
> including her expressed level of pain since her alleged
> onset date.  Overall, during this period, the claimant's
> treatment has been relatively conservative in nature.
> Medication and epidural injections generally "helped" her
> back and leg pain.  She walks unaided without a cane.
> Although she reported medicinal side effects, the
> evidence overall does not disclose serious pharmacology
> side effects or complaint to her doctors that would not be
> accommodated by the adopted RFC.  No physician,
> treating or otherwise, has ever indicated that there was a
> medical reason why he [sic] would need to lie down or
> rest as frequently as alleged.  The claimant's reported
> activities also detract from assertions she can perform no
> substantial gainful activity due to physical or mental
> impairment.  In fact, in a function report in exhibit 4E,
> she reported a variety of significant activies [sic]
> including personal care tasks, washing/cutting/chopping
> fruit with meal preparation, laundry, dishes, vacuuming,
> and cleaning.  Although she described worsening
> symptoms and reduced functioning, she maintained the

> ability to drive a car, shop for food/clothes, and maintain
> hobbies like reading, taking walks, and baking.  I have
> considered all her complaints within the period under
> review, but conclude she is capable of performing tasks
> as outlined above in the RFC herein, without other
> special consideration (Ex. 1F-21F).

(Tr. 63).  Further, the ALJ pointed to plaintiff's own statements to doctors which

contradict her claims of disabling limitations.  For example, the ALJ pointed to her

statement in October 2014 in which she said piriformis injections did "very well"

to manage her leg and back pain, and that she was "generally happy with her pain

level."  (Tr. 60, 61).  Regarding her mental impairments, in July 2013 plaintiff

indicated that her mental conditions worsened with the diagnosis of her physical

conditions, but "she endorsed positive social activities with friends and family,

attending lunches, going to the food bank, and attending concerts."  (Tr. 62).

Plaintiff also indicated that her mood and anxiety were "fine," "improved," or

"good" with medication.  (Tr. 62).  The ALJ's discussion in the decision shows

that he considered plaintiff's complaints, the objective medical evidence, and the

consistency of her complaints with her own statements to physicians and to the

record evidence.  The ALJ's credibility determination thus comports with the

regulation.

Plaintiff's argument that the ALJ failed to properly assess her credibility

because he did not credit her good work history and because he heavily relied on

her activities in discounting her credibility is not well-taken.  Contrary to plaintiff's

contention and as demonstrated above, the ALJ did not simply rely on plaintiff's activities in determining her credibility. Indeed, the ALJ's discussion shows that he considered her activities in conjunction with the consistency of her statements with the medical evidence and as evidence that she was not as limited as alleged. In *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 Fed. Appx. 430, 433 (6th Cir. 2016), the court held that the ALJ was not required to explicitly discuss the claimant's work history when assessing his credibility; the critical question was whether the ALJ's credibility determination was supported by substantial evidence. *Cert. denied sub nom. Dutkiewicz v. Berryhill*, 137 S. Ct. 1365 (2017); *see also Jones v. Comm'r of Soc. Sec.*, 2016 WL 759439, at *2 (E.D. Mich. Feb. 26, 2016) ("[T]his circuit does not follow the Second Circuit's procedure of automatically according a Social Security claimant 'enhanced' or 'substantial' credibility based upon her long-standing work history."). Here, the ALJ did not specifically discuss plaintiff's work history, but the ALJ's credibility determination is still supported by substantial evidence, as demonstrated above, and is entitled to deference, as explained above.

Plaintiff's reliance on *St. Cin v. Comm'r of Soc. Sec.*, 2015 WL 3660151 (W.D. Mich. June 12, 2015), is misplaced. In *St. Cin*, the ALJ discredited the plaintiff's allegations because he performed "significant activities of daily living including getting his daughter ready for school, picking her up from school,

picking up his wife from work, and attending college for an accounting degree."
*Id.* at *8.  However, the court found that these activities were not inconsistent with
his allegations and therefore the ALJ had erred.  *Id.*  For example, the plaintiff's
ability to drive to pick up his daughter and wife required no more than a 3-4 mile
round trip and getting his daughter ready for school meant telling her to get up and
get ready for school.  *Id.*  Additionally, the court did not say that the ALJ must cite
and rely on good work history in making a credibility determination.  Rather, the
court merely pointed out that the fact that the plaintiff was attending college so that
he could return to work bolsters his credibility and cited cases stating that good
work history strengthens credibility.  *Id.*

　　　Here, the ALJ did not rely solely on plaintiff's activities in discrediting her.
Rather, the ALJ relied on her activities, the inconsistencies between her allegations
and the medical evidence, and inconsistencies between her allegations and her own
statements to physicians.  Further, a failure to discuss work history is not reversible
error when the credibility analysis is otherwise supported by substantial evidence.
*Smith v. Berryhill*, 2017 WL 6803422, at *5-6 (E.D. Mich. Nov. 20, 2017), *report
and recommendation adopted*, 2018 WL 363966 (E.D. Mich. Jan. 2, 2018).

　　　 Because the ALJ reached his decision using correct legal standards and
because those findings were supported by substantial evidence, the Court must
affirm it, even if reasonable minds could disagree on whether the individual was

disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). As noted earlier, the substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation.  *Willis v. Sec'y of Health
and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of
Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule
72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).
The response must specifically address each issue raised in the objections, in the
same order, and labeled as "Response to Objection No. 1," "Response to Objection
No. 2," etc.  If the Court determines that any objections are without merit, it may
rule without awaiting the response.

Date: February 27, 2018                    s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 27, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>